MHN

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BERNARD M. ELLIS, | ) |
| | ) |
| Appellant-Defendant, | ) No. 10 C 1370 |
| | ) |
| v. | ) Judge Ruben Castillo |
| | ) |
| BOARD OF JEWISH EDUCATION, | ) |
| | ) |
| Appellee-Plaintiff. | ) |

## MEMORANDUM OPINION AND ORDER

This case is before the Court on direct appeal from the United States Bankruptcy Court for the Northern District of Illinois ("Bankruptcy Court") pursuant to 28 U.S.C. § 158(a). On April 14, 2009, Bernard M. Ellis ("Ellis") filed a voluntary petition under Chapter 7 for bankruptcy relief. (R. 2, Record on Appeal, Ex. 4 at 140.) In July 2009, the Board of Jewish Education ("BJE") initiated an adversary proceeding seeking a determination of non-dischargeability under 11 U.S.C. § 523. (*Id.* at 142.) The BJE subsequently moved for summary judgment on its adversary complaint. (R. 2, Record on Appeal at 46.) On January 14, 2010, the Bankruptcy Court granted the BJE's motion. (R. 2, Record on Appeal, Ex. 4 at 162-63.) Ellis is now appealing the Bankruptcy Court's ruling. (R. 2, Record on Appeal at 2.) For the reasons stated below, the ruling of the Bankruptcy Court is affirmed.

## RELEVANT BACKGROUND

In or about 1989, Selma Krahn ("Krahn") retained Ellis to prepare her will. (R. 2, Record on Appeal at 33.) After Ellis prepared this document, Krahn passed away. (*Id.* at 3.) Krahn's will named Ellis as the executor of the will; it also provided that the BJE would receive the

remainder of Krahn's estate ("Krahn Estate"). (*Id.*)

The BJE subsequently filed a lawsuit against Ellis in the Circuit Court of Cook County ("Circuit Court"). (*See* R. 2, Record on Appeal, Ex. 1 at 6.) In its complaint, the BJE set forth seven counts alleging legal malpractice, breach of fiduciary duty, conversion, and unjust enrichment. (*Id.* at 5-6.) After a bench trial, the Circuit Court entered a judgment order ("Judgment Order") on June 13, 2007 in which it ruled in the BJE's favor on the following counts: (1) Count I for legal malpractice; (2) Count II for negligent breach of fiduciary duty as attorney for the Krahn Estate; (3) Count III for intentional breach of fiduciary duty as attorney for the Krahn Estate; (4) Count IV for negligent breach of fiduciary duty as executor of the Krahn Estate; (5) Count V for intentional breach of fiduciary duty as executor of the Krahn Estate; (6) Count VI for conversion; and (7) Count VII for unjust enrichment. (*Id.* at 10-11.) Based on its conclusions with regard to legal liability, the Circuit Court awarded $966,600.28 in compensatory and $2 million in punitive damages. (*Id.* at 11.) The Circuit Court also granted the BJE leave to file its petition for attorneys' fees and costs, and retained jurisdiction to consider and rule upon it. (*Id.*)

Ellis subsequently appealed the Judgment Order pursuant to Illinois Supreme Court Rules 301 and 303.[1] (R. 2, Record on Appeal, Ex. 4 at 118-19.) The Appellate Court of Illinois for the First District ("Appellate Court") dismissed the appeal as untimely. (R. 2, Record on Appeal, Ex. 1 at 15-16.)

---

[1] Illinois Supreme Court Rule 301 states that "[e]very final judgment of a circuit court in a civil case is appealable as of right. The appeal is initiated by filing a notice of appeal. No other step is jurisdictional. An appeal is a continuation of the proceeding." Ill. Comp. Stat. S. Ct. Rule 301. Rule 303 sets forth the specific procedure by which a final judgment can be appealed. *See* Ill. Comp. Stat. S. Ct. Rule 303.

2

In the fall of 2008, the BJE initiated proceedings to discover assets to be used to satisfy the Judgment Order. (*See* R. 2, Record on Appeal, Ex. 1 at 19-20.) Ellis subsequently moved to quash the citation to discover assets. (R. 2, Record on Appeal, Ex. 4 at 121.) In his motion, Ellis argued that because the BJE had not presented a detailed petition for attorney's fees, the issue of fees was unresolved. (*Id.*) As a result, Ellis concluded that "[b]y reason of the pending issued with respect to attorney's fees, the [Judgment Order] is not a final order disposing of all the issues in the case." (*Id.*) On November 5, 2008, Ellis' motion to quash was denied "for the reasons stated in court." (*Id.* at 128.)

On April 14, 2009, Ellis filed a voluntary petition under Chapter 7 for bankruptcy relief. (*Id.* at 140.) In July 2009, the BJE initiated an adversary proceeding seeking a determination of non-dischargeability under 11 U.S.C. § 523 ("Section 523"). (*Id.* at 142.) On October 14, 2009, the BJE moved for summary judgment and asked the Bankruptcy Court "for a declaration . . . that the entirety of the debt owed to [the BJE] by [Ellis] is non-dischargeable in the underlying bankruptcy case." (R. 2, Record on Appeal, at 48-50.) In its motion, the BJE, relying on the doctrine of collateral estoppel, argued that the debt Ellis owed to it was not dischargeable because "the uncontestable facts, as [previously adjudicated], establish that several provisions of the Bankruptcy Code mandate summary judgment" in their favor. (*Id.* at 49.) The BJE invoked three distinct portions of the Bankruptcy Code in support of their argument. First, relying upon Section 523(a)(2)(A), the BJE contended that the debt cannot be discharged because it "arose out of Ellis' false pretenses, false representations, and actual fraud." (*See* R. 2, Record on Appeal, at 49.) Next, the BJE claimed that Section 523(a)(4)–which prevents discharge for debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny"–also bars Ellis

3

from discharging the debt. (*See id.*) Citing Section 523(a)(6), the BJE finally maintained that because the debt arose out of a "willful and malicious injury" by Ellis to the property of another, it was entitled to summary judgment. (*See id.*)

Ellis responded to the BJE's motion on November 17, 2009. (R. 2, Record on Appeal, Ex. 3 at 29.) In relevant part, Ellis argued that the BJE could not rely upon the findings in the Judgment Order to prevent him from "disputing the allegations directed against him" in the adversary proceeding. (*Id.*) Such a reliance, he maintained, would be inappropriate because all of the requirements of the doctrine of collateral estoppel–namely, a final judgment on the merits–were not satisfied by the Judgment Order. (*Id.* at 25-26.) As with his motion to quash, Ellis argued that because the Circuit Court retained jurisdiction and granted the BJE leave to file a petition for attorney fees and costs, its Judgment Order was not final. (*Id.* at 26.)

On January 14, 2010, the Bankruptcy Court granted the BJE's motion for summary judgment. (R. 2, Record on Appeal, Ex. 4.) In its oral ruling, the Bankruptcy Court first found that the Judgment Order is indeed a final order. (*Id.* at 152.) Responding to Ellis' argument, the Bankruptcy Court noted that the "judgment order is not rendered non-final merely because the court retained jurisdiction to rule on an attorney's fee petition if the BJE chose to file one . . . All issues in controversy were decided." (*Id.*) After deciding the issue of finality and finding that collateral estoppel barred Ellis from relitigating issues decided by the Circuit Court, the Bankruptcy Court then proceeded to determine whether the Circuit Court's findings satisfied Section 523's non-dischargeability requirements. (*Id.* 154-63.) The Bankruptcy Court concluded that because the requirements of Section 523(a)(4) and (a)(6) were satisfied by the Circuit Court's findings, "the debts owed to the BJE by Bernard Ellis are therefore nondischargeable in

4

bankruptcy." (*Id.* at 162.)

Ellis appealed the Bankruptcy Court's entry of summary judgment on January 22, 2010. (R. 2, Record on Appeal, at 2.) As the basis for his appeal, Ellis argues that the Bankruptcy Court erred in finding that he was estopped from litigating issues that were decided by the Circuit Court. (R. 14, Ellis Br. at 2.) The Bankruptcy Court was mistaken in finding that collateral estoppel applied, he maintains, because "the Judgment Order was not a final order under Illinois law, and thus, not an 'adjudication' under the second prong of the four step test for the doctrine of 'collateral estoppel.'"[2] (*Id.* at 2-3.) In seeking an affirmance of the Bankruptcy Court's decision, the BJE asserts that the Judgment Order is indeed final and thus properly served as the basis for precluding the relitigation of issues decided by the Circuit Court. (R. 15, BJE Br. at 3.)

## LEGAL STANDARD

A district court sits as an appellate court in reviewing a bankruptcy court's rulings. *See* 28 U.S.C. § 158(a)(1). A bankruptcy court's factual findings are reviewed for clear error, and its legal conclusions are reviewed *de novo*. *In re Dollie's Playhouse, Inc.*, 481 F.3d 998, 1000 (7th Cir. 2007). When the proceeding under consideration was decided on summary judgment, a district court's review is *de novo*. *See Frierdich v. Mottaz*, 294 F.3d 864, 867 (7th Cir. 2002).

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A court construes all facts and reasonable inferences in the light most favorable to the nonmoving party.

---

[2] Ellis does not challenge the Bankruptcy Court's conclusions regarding the other three elements required for issue preclusion to apply. (*See* R. 14, Ellis Br. at 2-3.)

*Turner v. The Saloon, Ltd.*, 595 F.3d 679, 683 (7th Cir. 2010).

## ANALYSIS

The doctrine of collateral estoppel, which is also known as issue preclusion, "bars relitigation of an issue already decided in a prior case." *In re A.W.*, 896 N.E.2d 316, 321 (2008) (quoting *People v. Tenner*, 794 N.E.2d 238, 247 (2002)). Collateral estoppel principles apply in discharge exception proceedings under Section 523(a). *Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991). The preclusive effect of a state court judgment in a federal case is determined by the state law where the judgment was rendered. *See* 28 U.S.C. § 1738; *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985) ("[28 U.S.C. § 1738] directs a federal court to refer to the preclusion law of the State in which judgment was rendered"). This doctrine applies to both questions of law and findings of fact. *Du Page Forklift Serv., Inc. v. Material Handling Servs., Inc.*, 744 N.E.2d 845, 849-50 (2001).

In Illinois, collateral estoppel applies when four requirements are met: (1) the issue decided in the prior action was identical to the one presented in the suit in question; (2) a court of competent jurisdiction rendered a final judgment on the merits in the prior action; (3) the party against whom the doctrine is asserted was a party to the prior action or in privity with such a party; and (4) the factual issue against which the doctrine is interposed has actually and necessarily been litigated and determined in the prior action. *LaSalle Bank Nat. Assoc. v. Vill. of Bull Valley*, 826 N.E.2d 449, 455-56 (2005) (citing *Talarico v. Dunlap*, 667 N.E.2d 570, 572 (1996), *aff'd* 685 N.E.2d 325 (1997)). On appeal, Ellis solely argues that the Judgment Order has no preclusive effect because it was not a final order under Illinois law. (R. 14, Ellis Br. at 2-3.) The Court will therefore limit its analysis to a determination regarding the finality of the Circuit

Court's judgment.

"A final order or judgment is a determination by the court on the issues presented by the pleadings which ascertains and fixes absolutely and finally the rights of the parties to the litigation." *Berg v. White*, 828 N.E.2d 889, 893 (2005) (quoting *Physicians Ins. Exch. v. Jennings*, 736 N.E.2d 179, 185 (2000)).[3] To determine whether a judgment is final, a court should look to its substance rather than to form. *In re J.N.*, 435 N.E.2d 473, 476 (1982). A judgment or order is final "if it disposes of the rights of the parties, either on the entire case or on a separate part thereof." *Long v. Elborno*, 922 N.E.2d 555, 563 (2010). In other words, a judgment is final if it determines the litigation on the merits so that, if affirmed, the only thing remaining is to proceed with the execution of the judgment. *Flores v. Dugan*, 435 N.E.2d 480, 482 (1982); *In re M.M.*, 786 N.E.2d 654, 659-60 (2003). If jurisdiction is retained for the future determination of matters of substantial controversy, the order is not final. *In re Guzik*, 617 N.E.2d 1322, 1325 (1993). Finally, for collateral estoppel purposes, finality "requires that the 'potential for appellate review must have been exhausted.'" *Werderman v. Liberty Ventures, LLC*, 857 N.E.2d 320, 326 (2006) (quoting *Ballweg v. City of Springfield*, 499 N.E.2d 1373,

---

[3] In his submissions to the Court, Ellis relies heavily upon case law interpreting Illinois Supreme Court rules governing appeals. (*See* R. 14, Ellis Br. at 10-11.) What both Ellis and BJE fail to address, however, is the relationship between appealability and finality for collateral estoppel purposes. Illinois courts, like the parties in this case, have generally relied upon the body of law interpreting the final judgment requirement for purposes of appeal in examining the second collateral estoppel requirement. *E.g., In re J'America B.*, 806 N.E.2d 292, 301 (2004) (utilizing case law interpreting finality under Supreme Court Rule 301 in considering whether finality for collateral estoppel purposes existed); *cf. SDS Partners, Inc. v. Cramer*, 713 N.E.2d 239, 241 (1999) (relying upon case law considering finality for purposes of appeal in examining whether judgment was final for purposes of *res judicata*). Accordingly, in considering whether the Circuit Court rendered a final judgment on the merits, the Court will look for guidance in state law interpreting the final judgment requirement for purposes of appeal.

7

1375 (1986)).

Here, the Court finds that the Circuit Court's Judgment Order is a final judgment on the merits for purposes of collateral estoppel. In Illinois, a "judgment is 'on the merits' in the sense that it may be pleaded to bar a subsequent action where it amounts to a decision concerning the rights and liabilities of the parties based on ultimate facts or facts disclosed by pleadings, evidence, or both, and on which the right of recovery depends irrespective of formal, technical, or dilatory objections or contentions." *A.W. Wendell and Sons, Inc. v. Qazi*, 626 N.E.2d 280, 289 (1993) (citing *Fried v. Polk Bros., Inc.*, 546 N.E.2d 1160, 1164 (1989)). In its ruling, the Circuit Court undoubtedly decided the merits of the case before it. Specifically, it considered and ruled upon the fundamental issues in the case, namely, whether Ellis was liable for engaging in legal malpractice, breaching his fiduciary duties, converting funds from the Krahn Estate, and gaining an unjust enrichment. (*See* R. 2, Record on Appeal, Ex. 1 at 10-11.) On each of the presented grounds for liability, the Circuit Court ruled conclusively against Ellis. (*Id.*) Not only that, it unequivocally ruled against Ellis on the eight counterclaims he presented. (*Id.* at 11-12.) Further, the Circuit Court set forth the amount of compensatory and punitive damages which flowed from its liability determination. (*Id.* at 11.) Its determination regarding the legal relationship between Ellis and BJE–specifically its conclusion on legal liability stemming from Ellis' conduct–was not tentative, provisional, or contingent upon any subsequent action. Rather, the Circuit Court's decision was clearly a final adjudication of the rights and liabilities of the parties which established the BJE's right to recovery based on its findings of facts regarding Ellis' actions. Indeed, the only thing which remained in the case was the execution of the judgment. This conclusion–combined with Ellis' exhaustion of the potential for appellate

8

review—makes clear that the Judgment Order is a final judgment for purposes of collateral estoppel.[4] Accordingly, the Bankruptcy Court correctly applied the doctrine of collateral estoppel in granting the BJE's motion for summary judgment.

Ellis maintains that the Circuit Court's decision to grant BJE leave to file its petition for attorneys' fees, along with its retention of jurisdiction to consider and rule upon a fee petition, renders the Judgment Order nonfinal. (R. 14, Ellis Br. at 2-3.) He makes several arguments in support of his position. First, Ellis argues that because "[a]ttorney's fees were a liability raised in the action from day one," the Circuit Court's failure to rule on the issue renders its order nonfinal. (*Id.* at 9-10.) As the basis for this argument, Ellis relies upon case law interpreting Supreme Court Rule 304, which sets forth the requirements for appealing from final judgments that do not dispose of an entire proceeding.[5] (*Id.*) The Court finds this argument unpersuasive as Supreme Court Rule 304 says nothing about when a judgment is properly considered final.

---

[4] In seeking appellate review of the Circuit Court's decision pursuant to Supreme Court Rules 301 and 303, Ellis himself predicated his appeal on the finality of the Judgment Order. (*See* R. 2, Record on Appeal, Ex. 4 at 118-19.) While obviously his subjective belief does not render the Judgment Order final, the Court notes that it is inconsistent for him to now challenge its finality.

[5] In relevant part, Supreme Court Rule 304 provides: "If multiple parties or multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both. Such a finding may be made at the time of the entry of the judgment or thereafter on the court's own motion or on motion of any party. The time for filing a notice of appeal shall be as provided in Rule 303. In computing the time provided in Rule 303 for filing the notice of appeal, the entry of the required finding shall be treated as the date of the entry of final judgment. In the absence of such a finding, any judgment that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable and is subject to revision at any time before the entry of a judgment adjudicating all the claims, rights, and liabilities of all the parties." Ill. Comp. Stat. S. Ct. Rule 304(a).

Instead, Supreme Court Rule 304 merely sets forth situations where an appeal may be taken from an action where some, but not all, claims have reached a final judgment. *See* Ill. Comp. Stat. S. Ct. Rule 304(a). As such, it fails to inform the Court's inquiry into whether there was a final judgment on the merits.

Next, Ellis cites a string of cases that he claims support the proposition that "a judgment is not final where the Court retains jurisdiction pertaining to matters requiring further rulings on fees, sanctions, or other relief sought in the underlying case." (R. 14, Ellis Br. at 10.) The Court finds that the hodgepodge of cases Ellis presents fails to support his position. For example, his reliance on *Cannon v. William Chevrolet/GEO, Inc.* is misplaced. In *Cannon*, the court faced the threshold issue of whether a judgment was appealable. 794 N.E.2d 843, 847 (2003). In opposing the appealability of a judgment issued on January 12, 2001, the plaintiff argued that the notice of appeal–which was filed on September 10, 2001–was filed more than 30 days after the last pending post-trial motion. *Id.* Of particular importance here, she argued that a petition for attorney fees–which was filed less than 30 days before the notice of appeal–was not a post-trial motion such as to prevent the January 12 order disposing of the main claims from being appealable. *Id.* In finding that the petition for attorney fees did affect the appealability of the January 12th judgment, the court ruled that the petition for fees was "not collateral" to the underlying action because the statute in question integrated the issue of fees "as part of the judgment." *Id.* Thus, the court concluded that, in the absence of a Supreme Court Rule 304 finding indicating that there was "no just reason to delay enforcement or appeal," the "January 12, 2001, order, *even if final*, remained *unappealable* until the resolution of [plaintiff's claim for fees]." *Id.* at 848 (emphasis added). The Court finds that the ruling in *Cannon* informs an

analysis regarding the appealability–and not the finality–of a judgment, and is therefore inapposite. *Cannon* is further distinguishable from the present case in that there–unlike here–a petition for fees was actually before the court. *See id.* at 847. *Cannon* therefore fails to persuade.

Similarly, Ellis' reliance on *John G. Phillips & Associates v. Brown* is unavailing. In *Phillips*, the Illinois Supreme Court ruled on the effect that a motion for sanctions pursuant to Supreme Court Rule 137 has on the appealability of a final order. 757 N.E.2d 875, 876-78 (2001). Affirming the appellate court's dismissal for lack of jurisdiction, the Illinois Supreme Court clearly held that a "since a motion for sanctions under Rule 137 is a 'claim' and a notice of appeal cannot be filed before the trial court has disposed of all claims, a notice of appeal cannot be filed before the trial court has ruled on all Rule 137 motions." *Id.* at 877. *Phillips* does not provide support for Ellis' argument because it fails to inform the Court's analysis regarding the finality of a judgment. Instead, *Phillips* squarely deals with the effect a properly presented motion for sanctions pursuant to Rule 137 has on the appealability of a judgment. As such, *Phillips* is unhelpful in determining whether the retention of jurisdiction to rule on a unfiled petition for fees affects the finality of a judgment.[6]

Like the previously discussed cases, Ellis' reliance on *Lamar Whiteco Outdoor Corporation v. City of West Chicago* fails to further his cause. In *Lamar*, the defendants

---

[6] Ellis' use of *Marsh v. Evangelical Covenant Church of Hinsdale* is unpersuasive for similar reasons. *See* 563 N.E.2d 459, 465-66 (1990) (holding that absent a finding that there is no just reason to delay enforcement or appeal, no appeal may be taken from an otherwise final judgment entered on a claim when a claim for attorney fees as sanctions remains to be resolved). His reliance on *Suburban Auto Rebuilders, Inc. v. Associated Tile Dealers Warehouse, Inc.* also fails to provide guidance regarding the finality of an order. 902 N.E.2d 1178, 1192-93 (2009) (citing *Phillips* and *Marsh*, and holding that a notice of appeal did not strip the circuit court of jurisdiction to rule on a timely petition for attorney fees pursuant to a contractual agreement).

11

appealed a circuit court order granting the plaintiff "reasonable attorney fees." 916 N.E.2d 886, 888 (2009). The circuit court's written order, however, failed to quantify the amount of those fees. *Id.* Applying Supreme Court Rule 301, the court held that since the circuit court's order did not specify the amount of attorney fees and costs to which the plaintiff was entitled, it could not be executed, and, thus, was nonfinal. *Id.* at 889. Because the order regarding fees was nonfinal, the court dismissed the appeal for lack of jurisdiction. *Id.* at 889-90. The Judgment Order in this case is easily distinguishable from the order in *Lamar* in that it did not make a determination regarding attorney fees. (*See* R. 2, Record on Appeal, Ex. 1 at 5-8.) Rather, it solely determined liability and quantified the amount of damages. (*Id.*) Further, unlike in *Lamar*, the Judgment Order left no question that was properly before it unanswered. Indeed, the Circuit Court's order was ready to be executed.[7] Again, Ellis fails to draw the Court's attention to case law supporting his argument.

Ellis' citation to *Cribbin v. The City of Chicago* is similarly unhelpful. In *Cribbin*, the court examined the issue of appellate jurisdiction under Supreme Court Rules 301 and 303. 893 N.E.2d 1016, 1024 (2008). At the center of the jurisdictional question was a plea for attorney fees that was present in the plaintiffs' complaint, but absent in the circuit court's post-trial judgment order. *Id.* at 1021, 1025. The relevant legal issue before the court was whether the order's failure to explicitly mention attorney fees rendered it nonfinal for purposes of appeal under Supreme Court Rule 303. *Id.* at 1025. The court found that it did not and, in arriving at its conclusion, stated that the request for attorney fees did not render the judgment order nonfinal

---

[7] In fact, as evident in the record, BJE initiated proceedings to discover assets to be used to satisfy the Judgment Order. (*See* R. 2, Record on Appeal, Ex. 1 at 19-21.)

where the request was "abandoned by plaintiffs and . . . no longer open for adjudication by the trial court." *Id.* Here, given the absence of any indication in the record that BJE filed a petition for attorney fees since the entry of the Judgment Order, it is evident that any claim for attorney fees that was present in BJE's complaint has been abandoned. Accordingly, the Circuit Court's retention of jurisdiction for an abandoned claim for attorney fees does not undermine the finality of the Judgment Order.

In summary, the cases Ellis relies upon fail to persuade the Court that the Circuit Court's retention of jurisdiction to rule upon an ultimately unfiled petition for fees renders the Judgment Order nonfinal.

Finally, Ellis argues that the Judgment Order is not a final judgment because the Circuit Court "reserved for future determination a 'substantial controversy.'" (R. 14, Ellis Br. at 11.) This argument is also unconvincing as there was no "substantial controversy" remaining in this case. Although he maintains that the issue of attorney fees was "extremely controversial," such a controversy is purely hypothetical because nothing in the record indicates that BJE filed a petition for fees. In cases where a "substantial controversy" has undermined the finality of a judgment, the "substantial controversy" has been actual and present before a court, as opposed to merely being "reserved for future determination." *See, e.g., In re Application of County Collector*, 917 N.E.2d 574, 578-79 (2009) (finding that a ruling on a motion in a tax deed proceeding was not a final judgment because the substantial controversy regarding the trial court's ultimate ruling on the underlying tax deed action remained); *In re Marriage of Schwieger*, 883 N.E.2d 556, 558-59 (2008) (holding that a judgment was nonfinal where a substantial controversy regarding a pending civil contempt petition remained ). Thus, this argument also

fails to unsettle the Court's conclusion that the Judgment Order is indeed a final judgment.

## CONCLUSION

For the reasons stated above, the Court finds that the Judgment Order is a final judgment for purposes of collateral estoppel. As such, Ellis was properly barred from relitigating issues decided by the Circuit Court. Accordingly, the Bankruptcy Court's decision is AFFIRMED.

Entered: *[signature]*

Judge Ruben Castillo
United States District Court

**Dated:** July 9, 2010